# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 22, 1925.

CHARLES N. DEMENT, ET AL.,
VS.
JOHN N. MACKALL, ET AL., STATE ROADS COMMISSION, AND H. S. SWAN.

*L. A. Wilmer, Armstrong, Machen & Allen* for complainants.

*Attorney-General Thos. H. Robinson* and *Fleet W. Cox* for defendants.

STANTON, J.—

The question raised by the facts of this case call for a determination of the meaning of Section 30 of Article 91 of the Code pertaining to the work of the State Roads Commission.

It has been said that in construing a statute mere words do not control. The whole surroundings, the purposes of the enactment, the ends to be accomplished, the consequences that may result from one meaning, rather than from another, and the cardinal rule that seemingly incongruous provisions shall be made to harmonize rather than conflict, must all be considered in determining whether particular words shall have a mandatory or a directory effect ascribed to them—94th Md., page 757.

The first thing that strikes the attention of the reader of Section 30 is the fact that every act to be performed by the State Roads Commission as prescribed by that section is preceded by the word "shall." The opening sentence reads: "The said Commission, when about to construct or improve in any manner any highway, *shall* give the County Commissioners of each County in which it lies a certified copy of the plans and specifications therefor, and a notice that said Commission is about to enter upon and proceed with the work in question. Said Commission *shall* thereupon advertise * * * for sealed proposals for construction * * * said proposals *shall* be publicly opened * * * and the contract for such work * * * *shall* be awarded by the Commission to the lowest responsible bidder, unless, in the opinion of said Commission, the interests of the State *shall* be better served by awarding the contract to some other bidder, when this may be done."

The intention of the Legislature is always sought in construing the language of an act, and "generally when no right will be impaired, provisions with no negative words, or implications, concerning the time and manner in which official persons shall perform designated acts are directory."

It must not be overlooked, however, that the persons with whom the State Roads Commission is authorized to deal under Section 30 are "bidders." They need not award the contract to the "lowest bidder," but, in the exercise of a discretion which is broader than the powers usually conferred in the performance of such work by public officials, they can award the contract to some other "bidder."

Now, if this does not mean to some other bidder under the advertisement, then two conditions arise:

First, the provision that the Commission shall advertise is made meaningless and nugatory, and they may as well save the delay and expense of any such proceeding;

And, secondly, the discretion conferred, to award to some other bidder than the lowest bidder under the advertisement, creates another class of bidders, which does not seem to have been contemplated by the Legislature.

The expression "lowest bidder" necessarily implies one of a class, and that class as contemplated by Section 30, are those who bid under the advertisement.

At another place in the section it reads: "In all cases where the contract for work and materials shall be given out, after *competitive bidding*, the successful bidder shall promptly execute a formal contract and bond.

If the Commission has the power to award a contract without advertising, although it may be called an extension of a previous contract, there is created a situation where the Legislature prescribed what must be done by a successful *competitive* bidder as to formal contract and bond; and utterly ignored any duties or requirements on the part of persons to whom work is awarded without competitive bidding. You would have two classes of contractors (referring to those where the cost of the work exceeds $500.00) who must become such by dealing with the State Roads Commission under the powers conferred by this section. In one case the Legislature directed what must be done, and in the other it was left to the discretion of the Commission what should be done. It is hardly conceivable that such a construction could be successfully urged, when the Legislature was dealing with one of, if not

the largest, piece of public work which the State has undertaken in its whole history. Certainly the intention of the Legislature must have been a fixed and uniform method of procedure in awarding these contracts. It does not answer the objection to say that the State Roads Commission always has, and always will, place the same requirements on contractors given "extension contracts," as the statute requires of *competitive bidders.*

The inquiry here is, whether there is any discretionary power to award work called "extension contracts" without advertising.

It just so happens that the work under contract C. H. 33 is literally an extension of the portion of the road contracted to be built under contract C. H. 32. But contract C. H. 33 is about twenty-seven thousand dollars, or more than twice the amount covered by contract C. H. 32, and actually covers a greater length of road; so that the extension contract is greater in every way than the original contract, except the cost per cubic yard. The cost is only incidental if the power to award the contract without advertising is discretionary, but the Legislature made the cost of the work the controlling element to determine in what cases the Commission must advertise.

Contract C. H. 33 was awarded nine or ten months later than contract C. H. 32. Is the Commission able to say to what extent the cost might have been reduced, even beyond the price named in contract C. H. 33, by the change in cost of material and labor, if competitive bidding had been required.

There is no limit in the power of the State Roads Commission as to the amount of work or the cost of an extension contract if this power to award is discretionary, and yet the Legislature expressly exempts only work not to exceed five hundred dollars as work which can be awarded without advertisement.

When we recall the whole surroundings, the purposes of the enactment, the ends to be accomplished, the consequences that may result from one meaning rather than from another, it seems inescapable that this section does not contemplate "competitive contracts" and "extension contracts." It means one class of contracts, and that is "competitive contracts," which shall

be invited by advertisement, except when the amount does not exceed five hundred dollars.

The power to reject any and all proposals, together with the power to set aside the lowest bidder and award the contract to some other bidder under the advertisement, is the widest sort of discretion in awarding work under this section, but other than this the duties of the Commission are directed to be performed as is set forth in the language of the section under consideration.

The Court is of the opinion that the requirement for advertising for work to cost more than five hundred dollars is mandatory, and the relief prayed for in the bill of complaint will be granted.

The Court further finds on the facts that there is no evidence of partnership, and the order will go against H. S. Swan, individually.